Good morning, Your Honors. Nancy Olson appearing on behalf of the government. I'd like to try to reserve two minutes of time for rebuttal, and I'll keep an eye on the clock. May it please the Court, the central dispute for the Court to consider in this case is whether Mr. Robbins was in custody when these two plainclothes officers arrived at his workplace at the department store and asked him if he minded speaking with them. And as this Court knows, this custody question, it turns on whether there was a restraint on Mr. Robbins' freedom to a degree that would be associated with a formal arrest. Would a reasonable person in his position in these circumstances feel free to leave? That's correct. And so as the Court's well familiar, we have the five-factor test, and what we use that test for is to help analyze the question that Judge Fletcher just said, so does he feel free to leave? And so we'll go with that, starting, if I might, with the confrontation with known evidence of guilt factor. This is a factor that the district court found favored custody, and the government disagrees with that analysis for a couple of reasons. The case law sets this factor up requiring confrontation and also known evidence of guilt, and so I think there are two issues with that. There wasn't the type of legally specific confrontation that's noted in the case law because we know that inquiring about the specifics of an investigation is not necessarily confrontation, and this is in the Bassignani case. In that case, they asked the defendant some specific questions about his e-mail account, about specific child pornography images that were found, and it wasn't just that they were asking specifics that made it confrontational or not. The court looked at how it was done. Was it accusatory? What was the tone? And so what we have here is very similar to Bassignani when, yes, they're asking him some questions. Do you want to talk about some specifics? Here's where we'd like to go. We'd like to talk about downloading. What do you have to say about downloading? And they proceed, but it's not accusatory, and it doesn't have that tone. I think it is. He gives them some phony story about we're here to help law enforcement, and they come back and say, oh, I don't think so because we have the download. We've seen the stuff. Well, Your Honor, I don't think Sawyer says that he's seen the stuff. We have the download, but they're very clearly telling him when he gives them a baloney story, no, that's not true because. The story about the Zonzi website, I agree with you. They say we hear that a lot. What they're trying to do is say, okay, we understand this is where you're going to start your explanation. Do you want to tell us anything else? Do you want to tell us about the downloading? For example, do you want to tell us the truth? Well, that's correct, and he comes around and he does say, he talks about where this interest might have started and how he found it. The officers don't challenge that story about how he stumbled upon it. And then they say, yeah, but we've got something that tells us what your search terms were. They say that they have the forensic capabilities once the search warrant is completed to go in and confirm search terms. They tell him at least five separate times, the search warrant's not done, we haven't looked at your computer yet. So they're saying very clearly we have the IP address, we're going to go off of that, here's what we expect to find. So they're giving him an open forum to say, you want to tell us or not, he's free to leave or not. They say you can end the questioning at any time. And so with that in mind, they're leaving it to him how much, if anything, he wants to tell. Ginsburg. Counsel, maybe you can help me, and maybe I'm just missing something in Notte. I thought in Notte that advising him that he has the right to counsel during this question is mandated by the Constitution. Doesn't that end the case? So you're speaking of the Miranda issue, correct, Your Honors? Yes. No. So there's two separate issues. If the court disagrees with the government on the custody issue, then you're correct. We would need to reach Miranda. And so shifting to that for a moment, what Notte says. All right. I'll hold off. I just thought that ended the case. No, no, no. We don't have to hold off. But let's just answer that question first. What Notte says is it can't be misleading. You have to examine it from a practical perspective. And in that case, the problem with why it was misleading was because the warning there was you can have an entitled to counsel prior to questioning. And so when you specify prior. Counsel Notte also goes on and talks at length about the distinction between inception and during, that there are two substantive rights. And the fact of being told you have a right to counsel does not satisfy Notte to say you have a right to counsel now or at any time because there are two issues during that person might. And they trace that right back to Miranda. So I don't see how the warning of a you have a right to an attorney satisfies anything in either Miranda or Notte. And by the way, Notte says, by the way, the cops can avoid any problems by reading a prepared statement. And the officer, to his credit, tried to paraphrase that written statement, but he sure didn't pick up the two critical steps. That's correct, Your Honor. And so we're just distinguishing Notte on the point that there was misleading because the word prior was inserted. And we're saying what could Robbins reasonably understand in this case if he's told at that moment you have a right to an attorney, meaning that starts now, and they don't limit it or qualify it in any way. So that's our point of distinguishing it. But what I'd like to do is actually draw the Court back to the custody question because if Robbins is not in custody, the Court doesn't need to reach that Miranda issue and whether this formulation, as Judge Fischer recognized, was done from memory. Unfortunately, when the card wasn't available, that issue cannot bear on this case because it really turns on whether he was in custody or not. Yeah, but if you lose on custody under the Kim factor, we would have to reach it. That's correct, Your Honor. Okay. We understand that, I think. I think that's correct. So I'll just go back to the factors, if I might. The physical surrounding factor is another one I'd like to highlight. The issue here is we had the District Court looking to the Court's prior workplace cases. So that's Kim and Bassignani. And rather than looking at what happened there and drawing a legal significance from what this Court said, the Court was focused on the facts of those cases. So it was, were there people coming in and out? There were no officers here. But the relevance there wasn't that there were people coming out. The legal test that that case set forth was, did the officers do anything to create the seclusion? Did the officers close him off from the outside world? And we don't have that here because they step into the break room, they're sitting down, they're having a conversation, and then we do know some employee comes in, apparently to get coffee and leaves. But the officers didn't do anything besides say, do you want to talk to us? They go sit down and talk. People could have come and gone just because nobody, more than one person, needed to come in at that time. It doesn't mean the officers set that up. And same thing with the Kim factor about whether someone could provide moral support. The issue is not whoever's closest could provide it. It's was it the person in Kim, the family, the father and, I'm sorry, the husband and the son. If we're looking at all the factors, though, which, of course, we have to, one of the things that bothers me about this case from the perspective of the government is, at the beginning, one of the officers says, you're not under arrest right now. He's never told you're free to leave at any time. That's the standard thing to say. And well-trained officers will say it, like, every 20 minutes, maybe every 10 minutes. And they never told him that. So that precise phrasing is certainly one factor that helps to find against custody. However, this court has never set down a Bright Line rule that said it has to be verbatim. And like in Bassignani, for example, that precise language is not used. And, of course, I'm not asking for it, but I'm putting that as one of the factors. And I think it's a real factor. I mean, if you're not told you're free to go, but instead you're told, well, we haven't arrested you yet. But you're told, you can speak to us if you want. You can stop answering questions at any time. And the import of that is if he decides to stop answering questions, then the interview is done. Not, you can decide to stop answering, but we're going to make you sit here. Well, it might be if you stop answering questions, we'll arrest you now. Except where they said that you're not under arrest. Well, they say you're not under arrest right now. That's correct. And then they said, and you can stop answering questions. Well, if I'm sort of working that through in my head, does that mean as soon as I stop answering questions they're going to arrest me? It all depends on the factors, whether there's coercion and whether they're pressuring him. And, Your Honor, we would just ask that you listen to the audio because it is pretty clear from the tone and the tenor of this conversation that it is consensual. But I'm almost out of time, so if I could just save a little time for rebuttal. That's fine. Thank you. Good morning, Your Honor. Erica Choi for Mr. Jason Robbins. I'd like to pick up where the court left off about the detective never told him that he was free to leave. And, in fact, they told him you're not under arrest right now. But three things happened before he even said you're not under arrest right now, which I think are salient to this question of custody. Within the first two minutes, they tell him, one, we have police at your house executing a search warrant. Two, we've been downloading child pornography from you for a year. And, three, they tell him they confirmed that he's on the clock at work, that he's on his shift. And the district court actually quoted this on page 7 of the record in its order on line 19. What time are you supposed to start your shift? I'm already on. Oh, okay. Let me see if I can get some more information from you. A person in that position who has been told, a reasonable person who has been told, you can't go home because our office is searching there. We've been investigating you for a year for this very serious, serious crime. And I understand you're on your work shift, but we're going to continue talking here. All of that conveys to the person that they're not free to leave. And then when they're told you're not under arrest right now, that person would reasonably understand, well, that means I have to stay here and continue answering these questions, which is exactly what Mr. Robbins did for the next 90 minutes. All of the facts that the district court laid out are undisputed, and the court reviews those facts for clear error, and that includes scene and action-setting questions such as that the interrogation took place in a, quote, secluded break room. What I would just ask, the government didn't answer my question about NOTI. Wouldn't we have to overrule it to hold for the government if we fell into risk custody? No, Your Honor. And in fact, NOTI actually, the language in NOTI was the warning said that you have the right to the services of an attorney before questioning. If you desire an attorney and cannot afford one, one will be appointed by the court with no charge to you. And this Court said that that was not sufficient. Even when they said before questioning, it didn't convey the right to counsel during questioning. And here the Court said that you have the right to the services of an attorney  And here the Court said that you have the right to the services of an attorney before questioning. Why doesn't that end the case? And it does end the case, Your Honor. I think that answers it. That's all I wanted to know. Thank you. Not only was the – not only does NOTI answer that question, Miranda itself answers that question, because the right must be conveyed, the warnings must be given before questioning. And in this case, they just started questioning him immediately, obtained a confession, and continued questioning for the next 90 minutes. But I think I'm right that if he's not in custody, a Miranda warning is not necessary. That's correct, Your Honor. So in order to get to NOTI, we need to decide that he's in custody. Yes. Because if he's not in custody, no Miranda warning is required. That's correct. And the interrogation and the custody, both portions of that were thoroughly analyzed by the district court below. And this Court, I think, can easily affirm, based on the findings in the record and the Court's analysis. And the Court, in I think about 10 pages of the 17-page order, very carefully went through the five factors. And I disagree with the government's characterization that it was some sort of rigid test where the facts had to match exactly with Bassignani or Kim. The Court carefully went through and distinguished and analogized in applying the case law to the facts of this case. And so for that reason, I'd ask the Court to affirm the order suppressing statements and remand for trial on the tangible evidence in this case, unless the Court has further questions. Okay. Thank you. Thank you. If you'd put one minute on the clock. Very briefly, Your Honors, and Judge Nelson, I apologize. I think I misunderstood your question about NOTI. Probably my fault. When you rephrased, I understand your question. You said specifically, would we have to overrule it if we found there was custody. I think you would have to distinguish it. I don't think you would have to – well, you can't overrule it because you're a three-judge panel. I'm glad that you know that. Yes. I think you would have to distinguish it to say in NOTI the problem was it was misleading because you provided one. You said prior, but you didn't say during. And when you say prior, it makes it sound specific that that's all you get. And so here, we're saying it was more blanket in saying you have a right to an attorney. That's right now. You have that right. We're not limiting it by time or space or anything. You would have to make that distinction. It sounds like the Court does not want to go in that direction, so I just want to make one final point about the custody analysis, which would be, again, we look at the totality. If we look at what the officers did here. One thing that happens in cases like this, if we have an issue where the officers have made a mistake, it's really incumbent upon the government to be able to go back and tell them, this is what you did wrong here. You, for example, you showed your gun. Don't do that next time. And so we really have to look at these facts and say, they didn't show their guns. It wasn't a police-dominated room. He's sitting by the door. He wasn't restrained. They asked him if he wanted to go in. They didn't tell him. They kept a low-key tone. They let him decide. They stayed friendly and they made that comment that they can end it at any time. And so, if we have all those facts, we just, we're trying to find what we can tell them that they did wrong here. And I think the only thing that we can land on is, Judge, the comment earlier about free to leave at any time, but we do feel that there was the equivalent statement that was made about you can stop answering questions at any time, or you can stop when you want. And so, we're just trying to find a clear rule here that we could. Now, it's a multi-factor test, so you're not going to get a clear rule. But it's very obvious that you would have a different case if they had said early and often, you are free to leave at any time. We would just ask the court to consider the advisement he was given, that he could stop answering questions at any time. Thank you. Got it. Okay. Thanks, both sides, for your good arguments. United States v. Robbins, now submitted for decision. The next case, criminal management v. United States.
judges: D.W. Nelson, W. Fletcher, Fisher